## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.M.**

**No. 19-0717** (Raleigh County 18-JA-198-P)

**FILED**

**March 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.M., by counsel Dennie S. Morgan, appeals the Circuit Court of Raleigh County's July 16, 2019, order terminating her parental rights to J.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Winifred L. Bucy, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2018, the DHHR filed an abuse and neglect petition alleging that petitioner was diagnosed with schizoaffective and bipolar disorders and, as a result, suffered psychiatric issues that placed the child in danger. Specifically, the DHHR alleged that petitioner expressed to the child's grandmother, with whom they lived, that she was "experiencing nasty . . . sexual thoughts" about the child. Based on this issue, the grandmother would not leave petitioner alone with the child. During the DHHR's investigation, petitioner admitted that "she . . . had thoughts of harming her daughter" for two years. According to petitioner, "'the voices' told her to 'kill [her] baby'" and, in response, she "tried to overdose on her prescribed medications twice" so that she would

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

not harm the child. Petitioner further admitted that "'the voices' told her to have sex with her daughter" and that she believed her daughter, then two years old, wanted to have sex. Petitioner also admitted that she did not know her specific mental health diagnosis or what medications she was prescribed and that she smoked marijuana and drank liquor with her medications. Ultimately, petitioner acknowledged that her medications were not working and that she wanted help. Petitioner thereafter waived her preliminary hearing.

During an adjudicatory hearing in November of 2018, the DHHR presented testimony regarding its investigation into the conditions in petitioner's home. Petitioner then testified and "confirmed most of the facts testified to by the . . . investigator." Based on this evidence, the circuit court found that petitioner abused and/or neglected the child.

In March of 2019, the circuit court held a hearing on petitioner's motion for a post-adjudicatory improvement period, during which the DHHR submitted petitioner's psychological evaluation report. According to the evaluation, petitioner "reported little perception of a need for change or motivation for treatment intervention." The report also concluded that petitioner "minimized her history of substance abuse" given that she reported "that she had only abused marijuana and synthetic marijuana in the past," despite the fact that "[s]he also has a significant history of abuse of alcohol, methamphetamine, and cocaine." Although she "reportedly tested negative since her medication was adjusted," the report also noted petitioner's failure to participate in substance abuse treatment. What the report found "most concerning," however, was petitioner's "mental health history and her frequent noncompliance with medication and treatment." According to the report, petitioner "has a history of hospitalizations for symptoms of psychosis and suicidal ideation," and she tended to comply upon discharge for only short periods before she "stop[ped] taking the medication, causing the hallucinations to become prevalent again and at times resulting in extreme actions that she takes to prevent herself from hurting her child both physically and sexually." The report also indicated that petitioner "acknowledge[d] continuing to experience psychotic symptoms while on medication." Based on these factors, the evaluation concluded that petitioner "does not appear to be capable of living [with] or parenting her child" and assessed her prognosis for improved parenting to be "poor, largely due to [her] ongoing mental health problems, . . . her proclivity to become noncompliant with her medication regimen and mental health treatment, [and] her likelihood of substance abuse relapse."

Petitioner's treating psychiatrist testified and recommended that petitioner be granted an improvement period with "controls in place," including supervision and monitoring. This was based on the psychiatrist's agreement that petitioner's ability to parent the child would be directly affected if she were to stop complying with medication or treatment or if she relapsed into substance abuse. The psychiatrist also recommended that petitioner receive support from someone like the child's grandmother, with whom she lived. Petitioner's psychological report, however, concluded that the grandmother "has proven to be a poor supervisor" of petitioner and the child, especially considering the fact that the grandmother "has a history of inappropriate parenting of [petitioner] and has made deliberate efforts to mislead [Child Protective Services] by leaving [petitioner] and the child alone." Both the DHHR and the guardian opposed the motion, which the circuit court ultimately denied.

During a dispositional hearing in July of 2019, the DHHR and the guardian both argued that petitioner's failure to remain strictly compliant with her mental health treatment in the past, coupled with the poor prognosis from her psychological evaluation, illustrated the need to terminate her parental rights. Ultimately, after hearing the arguments of the parties, the circuit court found that the child's best interests necessitated termination of petitioner's parental rights, which it ordered.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

Petitioner first argues that the circuit court erred in denying her a post-adjudicatory improvement period because she alleges that the evidence established she was likely to fully participate. In support, petitioner relies on testimony from her treating psychiatrist, wherein he testified that he believed she should be entitled to an improvement period. According to petitioner, her psychiatrist testified as to all of the recommendations from petitioner's psychological evaluation and her ability to comply with these requirements. What petitioner fails to recognize, however, is that the recommendations from the psychological evaluation were specifically limited in that they were included "for [petitioner's] personal benefit" but were expressly "not expected to facilitate the reliable attainment of minimally adequate parenting within any reasonable timeframe." In short, regardless of whether petitioner's treating psychiatrist believed petitioner could comply with these recommendations, such compliance would not have impacted the psychological evaluator's conclusion that petitioner's ability to remedy the conditions of abuse and/or neglect was poor. Further, while petitioner argues that the circuit court should have afforded her psychiatrist's testimony more weight than the psychological evaluation, we find that this issue of credibility is not proper for appellate review. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

---

[2]The father's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in the current foster home.

Petitioner also argues that she was likely to comply with an improvement period because she sought the DHHR's help in the first instance. According to petitioner, "the only way this case gets filed is because [she] was seeking to improve her child's situation and better her mental health." While it is true that petitioner sought help for her serious mental health issues and the extreme danger they presented to the child's wellbeing, the fact that she sought this help is insufficient to establish error in the denial of an improvement period, given the circuit court's discretion in making the determination and the fact that an improvement period was not in the child's best interests.

As this Court has long held, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). More importantly, this Court has directed as follows:

> Compliance with the statutory requirements contained in West Virginia Code § 49-4-610 (2015) does not unconditionally entitle a parent to an improvement period. Only where such an improvement period does not jeopardize a child's best interests should one be granted and the circuit court's order granting an improvement period should set forth findings demonstrating the lack of prejudice or harm to the child.

Syl. Pt. 3, *State ex rel. W. Va. Dep't of Health and Human Res. v. Dyer*, -- W. Va. --, 836 S.E.2d 472 (2019). Here, given the fact that the psychological evaluation concluded that petitioner's prognosis for improvement was poor and improvement could not be attained in an appropriate timeframe, it is clear that the granting of an improvement period would have jeopardized the child's best interests by unnecessarily delaying permanency and stability for the child. This is especially true in light of petitioner's express reporting of "little perception of a need for change or motivation for treatment intervention." As such, we find no abuse of the circuit court's discretion in denying petitioner's motion.

Finally, petitioner argues that termination of her parental rights was inappropriate because the evidence established that she could correct the conditions of abuse and neglect in the near future, as evidenced by the fact that she sought mental health treatment for the issues giving rise to the petition and ceased her abuse of marijuana. We disagree. According to West Virginia Code § 49-4-604(c), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, the record shows that, despite the repeated intervention of mental health providers, petitioner was frequently noncompliant "with medication and treatment." Even more important, petitioner's failure to maintain strict compliance with her treatment resulted in "extreme actions," such as her multiple suicide attempts, in order to "prevent herself from hurting her child both physically and sexually." Given petitioner's "proclivity to become noncompliant with her medication regimen and mental health treatment," it is clear that the circuit court was presented with sufficient evidence upon which to find that there was no reasonable likelihood petitioner could correct the conditions of abuse and neglect in the

near future. Additionally, the circuit court found several times at the dispositional hearing that it was ordering termination of petitioner's parental rights because it was in the child's best interests. According to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find that petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 16, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: March 13, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins

**DISQUALIFIED:**

Justice John A. Hutchison

5